

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00038-CV

_____

IN THE INTEREST OF Z.G., A CHILD

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-706172-21

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

In this appeal, Appellant F.S.M. (Father) and Appellant C.G. (Mother) appeal the trial court's order terminating their respective parental rights to their child Z.G. (Zoey).[1] The trial court found that the Department of Family and Protective Services (the Department) had proved three conduct-based grounds for termination against Father and four conduct-based grounds against Mother and that termination of their respective parental rights was in Zoey's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), (R), (2). In his sole issue on appeal, Father contends that the evidence is legally and factually insufficient to support the trial court's best-interest finding. Mother's court-appointed attorney filed an *Anders* brief, stating that he did not find any legally nonfrivolous grounds constituting error. Because legally and factually sufficient evidence supports the trial court's best-interest finding with respect to the termination of Father's parental rights and because Mother's appeal is frivolous, we will affirm the trial court's termination order.

## II. BACKGROUND

### A. Zoey's Birth and Removal

Zoey was born in September 2021. Mother tested positive for methamphetamines throughout her pregnancy, and Mother also tested positive for

---

[1]To protect her identity, we use aliases to refer to the child and her brother. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

methamphetamines when she delivered Zoey at the hospital. Zoey's meconium tested positive for methamphetamines and marijuana.

Nidra Jones, an investigator for the Department, received a referral from the hospital regarding Zoey on the date of Zoey's birth. Mother admitted to Jones that she had used methamphetamines during her pregnancy, although Mother denied methamphetamine use during the last five months of the pregnancy. Father told Jones that he did not know what methamphetamines were, although he acknowledged that Mother used methamphetamines. Father admitted that he had previously tested positive for methamphetamines, stating that those test results had been positive due to his being around Mother. Jones also learned that Zoey had a brother, R.S.G. (Reid), who had tested positive for methamphetamines following his July 2020 birth.[2] Three days after Zoey's birth, she was removed from Father's and Mother's care and placed into a foster home where Reid was staying.

## B. The Events Following Zoey's Removal

### 1. Father's Service Plan and Positive Drug Tests

Reba Shaffer, a permanency specialist employed by Our Community Our Kids (OCOK),[3] testified that, following removal, the Department put a service plan in

---

[2]Father's and Mother's respective parental rights to Reid were terminated in August 2021.

[3]"OCOK is a private provider of community-based care that contracts with the Department to provide foster care case management, kinship, and family reunification services in parts of the state, including Tarrant County." *In re T.D.*, No. 02-22-00215-

3

place for Father. Father was asked to complete parenting classes, to participate in individual counseling, and to submit to random drug testing. Shaffer testified that Father completed the parenting classes and the individual counseling. As to the random drug testing, Father's hair tested positive for methamphetamines in April, May, June, September, October, and November 2022. Shaffer requested that Father submit to drug testing in December 2022, but Father did not submit to the test.

At trial, Father denied ever having used methamphetamines, but he had no explanation for his positive test results. In the past, Father had told the Department that his positive results were due to being around Mother. Mother testified, however, that Father was never present when she used methamphetamines, and Father testified that he had never seen Mother use drugs. Moreover, Mother stated that she did not use drugs in the family's home, explaining that she went outside to use drugs.

As to Father's drug use, Mother told Shaffer that she was concerned that Father was using methamphetamines, although Mother indicated that Father was not using methamphetamines in her presence. At trial, Mother stated that she had never seen Father use drugs, although she also said that Father occasionally behaved in the manner of someone who was using drugs.

---

CV, 2022 WL 11483054, at *3 n.9 (Tex. App.—Fort Worth Oct. 20, 2022, pet. denied) (mem. op.).

4

## 2. Mother's Service Plan and Positive Drug Tests

Shaffer testified that, following removal, the Department put a service plan in place for Mother. Mother was asked to complete a drug assessment, parenting classes, Narcotics Anonymous classes, and individual counseling. She was also asked to participate in random drug testing and to engage in inpatient drug treatment. Shaffer testified that Mother did not complete any of her services. Mother also tested positive for methamphetamines in October and November 2021, as well as January, February, March, April, July, and September 2022. Mother tested positive for marijuana in February, March, April, July, and September 2022.[4]

At trial, Mother admitted to having drug problems and stated that she had last used methamphetamine "a week or two" before trial. Father testified that he had never discussed Mother's methamphetamine addiction with her, noting, "[I]t's hard to understand because she's an addict and I am not, so I just don't understand it."

## 3. Zoey's Placement with the Foster Family

Following removal, Zoey was initially placed in a foster home with Reid. Thereafter, Zoey and Reid were sent together to a different foster family that adopted Reid. Apart from Zoey and Reid, that foster family consists of a foster father, a foster mother, and two foster siblings (the Foster Family). Shaffer testified that Zoey and Reid were "extremely bonded," noting that the two were "very friendly with one

---

[4]Shaffer requested that Mother submit to drug testing in November and December 2022, but Mother did not submit to those tests.

another" and that Reid shared well with Zoey and showed concern for her. Shaffer also testified that the Foster Family had been able to meet Zoey's emotional, physical, developmental, educational, and medical needs, and Shaffer anticipated that they would continue to meet those needs in the future. The Department's permanency plan was for Zoey to remain with the Foster Family and to be ultimately adopted by the Foster Family.

## C. Procedural Background

In its petition, the Department sought termination of Father's parental rights as to Zoey based on, among other things, the predicate termination grounds set forth in Subsections (D), (E), and (O) of Section 161.001(b)(1) of the Family Code. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O). The Department sought termination of Mother's parental rights as to Zoey based on, among other things, the predicate termination grounds set forth in Subsections (D), (E), (O), and (R). *See id.* § 161.001(b)(1)(D), (E), (O), (R).

Following a bench trial, the trial court signed an order finding that Father had engaged in conduct under Subsections (D), (E), and (O); that Mother had engaged in conduct under Subsections (D), (E), (O), and (R); and that termination of their respective parental rights was in Zoey's best interest. Father and Mother appeal from that termination order.

## III. DISCUSSION

### A. Father's Appeal

In his sole issue, Father challenges the trial court's finding that termination of his parental rights was in Zoey's best interest.[5]

#### 1. Standard of Review

For a trial court to terminate a parent–child relationship, the party seeking termination must establish, by clear and convincing evidence, that (1) the parent's actions satisfy just one of the many predicate grounds listed in Family Code Section 161.001(b)(1), and (2) termination is in the child's best interest under Section 161.001(b)(2).[6] Tex. Fam. Code Ann. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007.

---

[5]Father challenges the sufficiency of the evidence to support a best-interest finding under both Section 161.001(b)(2) and Section 161.003(a)(5), but the trial court did not make a finding based on Section 161.003(a)(5) and did not terminate Father's parental rights under that subsection. *See* Tex. Fam. Code Ann. § 161.003(a)(5). We will thus limit our analysis to the trial court's best-interest finding under Section 161.001(b)(2). *See In re P.L.*, No. 02-22-00463-CV, 2023 WL 2703805, at *4 n.7 (Tex. App.—Fort Worth Mar. 30, 2023, no pet. h.) (mem. op.) ("Mother also challenges the sufficiency to support a best-interest finding under Section 161.003(a)(5), but the trial court did not make a finding based on that subsection and did not terminate Mother's parental rights under Section 161.003.").

[6]Father does not challenge the finding of predicate grounds for termination.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged findings—here the best-interest finding—to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *see* Tex. Fam. Code Ann. § 161.001(b)(2). We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *J.P.B.*, 180 S.W.3d at 573. We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). Here, we review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the termination of Father's parental rights to Zoey is in Zoey's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). If the factfinder reasonably could form such a firm

8

conviction or belief, then the evidence is factually sufficient. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002).

### 2. Applicable Law

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence that is probative of the predicate grounds under Section 161.001(b)(1) may also be probative of best interest under Section 161.001(b)(2). *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *C.H.*, 89 S.W.3d at 28. We also consider the evidence in light of the following nonexclusive factors that the factfinder may apply in determining the child's best interest:

- the child's desires;

- the child's emotional and physical needs now and in the future;

- the emotional and physical danger to the child now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist these individuals to promote the child's best interest;

- the plans for the child by these individuals or by the agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one; and

- the parent's excuse, if any, for the acts or omissions.

9

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249; *E.N.C.*, 384 S.W.3d at 807. These factors do not form an exhaustive list, and some factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may suffice in a particular case to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of paltry evidence relevant to each factor will not support such a finding. *Id.*; *In re C.G.*, No. 02-20-00087-CV, 2020 WL 4518590, at *7 (Tex. App.—Fort Worth Aug. 6, 2020, pet. denied) (mem. op.); *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *4 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.).

### 3. Best-Interest Analysis

As to Zoey's desires, the record reflects that Zoey was one year old at the time of the termination trial and did not testify. "When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The record reflects that Zoey is in a foster home with Reid—her biological brother— and that Zoey and Reid have a very close bond. Moreover, Shaffer testified that the Foster Family was meeting Zoey's emotional, physical, developmental, educational, and medical needs. In contrast to the close bond between Zoey and Reid, Shaffer testified that Zoey did not appear to have a strong bond with Father. The record

10

further reflects that Zoey was removed from Father's care three days after her birth and that she had not spent a significant amount of time with Father.[7] The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Zoey.

As to Zoey's emotional and physical needs now and in the future and the emotional and physical danger to her now and in the future, the record reflects that Father tested positive for methamphetamines repeatedly during the case and that he also failed to submit to requested drug testing. Such evidence of past drug use and a refusal to submit to drug testing supports a finding that the parent has endangered the child's emotional and physical needs and posed a danger to the child. *See In re L.T.*, No. 02-22-00197-CV, 2022 WL 15053329, at *7 (Tex. App.—Fort Worth Oct. 27, 2022, no pet.) (mem. op.) (conducting best-interest analysis and noting that mother's pattern of drug use and refusal to submit to drug testing supported termination); *In re M.H.*, No. 02-22-00048-CV, 2022 WL 2840266, at *2–3, 6 (Tex. App.—Fort Worth July 21, 2022, no pet.) (mem. op.) (similar). And as to future drug use, a factfinder may measure a parent's future conduct by his past conduct. *In re A.H.*, No. 02-21-00402-CV, 2022 WL 1682422, at *11 (Tex. App.—Fort Worth May 26, 2022, no pet.) (mem. op.); *In re R.H.*, No. 02-19-00273-CV, 2019 WL 6767804, at *5 (Tex. App.—Fort Worth Dec. 12, 2019, pet. denied) (mem. op.).

---

[7]Shaffer stated that, at the time of trial, Father was allowed biweekly, ninety-minute visits with Zoey.

Moreover, the record reflects that Father minimizes the drug use of the family unit. Father stated that he did not believe that Zoey and Reid had tested positive for methamphetamines at their respective births, and Father admitted that he had never discussed Mother's methamphetamine addiction with her despite knowing of the addiction. And while he denied his own drug use, Father offered no explanation for his positive test results. *See In re A.J.W.*, No. 04-19-00346-CV, 2019 WL 6333468, at *6 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.) ("The court could have rationally concluded that [mother] is unable to protect her children or to provide them a safe and stable environment because she minimizes her drug problem."); *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *7 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.) (conducting best-interest analysis and noting that mother's "choice to minimize her past drug use" was a factor of "particular significance"). The trial court was entitled to find that these factors weighed in favor of terminating Father's parental rights to Zoey.

As to the plans for Zoey, Shaffer testified that the Department's plan was for Zoey to ultimately be adopted by the Foster Family, where she would remain with Reid. Father indicated that he wanted Zoey to be placed with his brother and mother. Father acknowledged that if Zoey was placed with his brother and mother, Zoey would be separated from Reid. Shaffer testified that removing Zoey from Reid would be "traumatizing to her and him." The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Zoey. *See In re A.O.*, No.

12

02-21-00376-CV, 2022 WL 1257384, at *14 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem. op.) ("Generally, it is in a child's best interest to keep siblings together whenever possible."); *In re A.J.T.*, No. 02-12-00029-CV, 2012 WL 3499418, at *4–5 (Tex. App.—Fort Worth Aug. 16, 2012, no pet.) (per curiam) (mem. op.) (affirming best-interest finding and noting that siblings were placed together).

As to Father's acts or omissions that may indicate that the existing parent–child relationship is not a proper one and Father's excuse, if any, for such acts or omissions, the record reflects that Father repeatedly tested positive for methamphetamines during the pendency of this case. Father, however, did not offer any explanation for the failed drug tests. The trial court was entitled to find that these factors weighed in favor of terminating Father's parental rights to Zoey. *See In re D.R.V.*, No. 08-22-00238-CV, 2023 WL 2544577, at *8 (Tex. App.—El Paso Mar. 16, 2023, no pet.) (mem. op.) (holding that mother's failure to offer any explanation for noncompliance with random drug testing was factor trial court could have considered in favor of termination as part of best-interest determination); *In re A.S.G.*, No. 04-17-00297-CV, 2017 WL 4801667, at *6 (Tex. App—San Antonio Oct. 25, 2017, no pet.) (mem. op.) (considering evidence that "mother never offered any explanation for her drug use during pregnancy" as factor to consider in best-interest analysis).

### 4. Best-Interest Conclusion

Viewing the evidence in the light most favorable to the trial court's best-interest finding, we hold that a factfinder could have reasonably formed a firm

13

conviction or belief that termination of the parent–child relationship between Father and Zoey was in Zoey's best interest, and we therefore hold that the evidence is legally sufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *J.P.B.*, 180 S.W.3d at 573. Based on our exacting review of the entire record and giving due deference to the factfinder's findings, we likewise conclude that the evidence is factually sufficient to support the trial court's best-interest finding. *See C.H.*, 89 S.W.3d at 18–19. Accordingly, we overrule Father's sole issue.

## B. Mother's Appeal

Mother's appointed appellate counsel has filed a brief asserting that he "has been unable to identify any legally non-frivolous grounds for appeal" and that Mother's appeal is therefore frivolous. *See Anders v. California*, 386 U.S. 738, 744–45, 87 S. Ct. 1396, 1400 (1967); *see also In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, order) (holding that *Anders* procedures apply in parental-rights termination cases), *disp. on merits*, No. 2-01-349-CV, 2003 WL 2006583, at *2–3 (Tex. App.—Fort Worth May 1, 2003, no pet.) (per curiam) (mem. op.). Counsel's brief meets the *Anders* requirements by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to advance on appeal. We provided Mother the opportunity to obtain a copy of the appellate record and to file a pro se response, but she did not do so.

14

When an *Anders* brief is filed, we must independently examine the appellate record to determine if any arguable grounds for appeal exist. *In re C.J.*, No. 02-18-00219-CV, 2018 WL 4496240, at *1 (Tex. App.—Fort Worth Sept. 20, 2018, no pet.) (mem. op.); *see Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We also consider the *Anders* brief itself and, if filed, any pro se response. *In re K.M.*, No. 02-18-00073-CV, 2018 WL 3288591, at *10 (Tex. App.—Fort Worth July 5, 2018, pet. denied) (mem. op.); *see In re Schulman*, 252 S.W.3d 403, 408–09 (Tex. Crim. App. 2008) (orig. proceeding).

We have carefully reviewed appointed appellate counsel's *Anders* brief and the appellate record. Having found no reversible error, we agree with counsel that this appeal is without merit. *See Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005); *In re D.D.*, 279 S.W.3d 849, 850 (Tex. App.—Dallas 2009, pet. denied). Therefore, we affirm the trial court's order terminating the parent–child relationship between Mother and Zoey.

Mother's counsel remains appointed in this appeal through proceedings in the supreme court unless otherwise relieved from his duties for good cause in accordance with Family Code Section 107.016. *See* Tex. Fam. Code Ann. § 107.016; *In re P.M.*, 520 S.W.3d 24, 27–28 (Tex. 2016) (order).

## IV. CONCLUSION

Having overruled Father's sole issue and having held that nothing in the record might arguably support Mother's appeal, we affirm the trial court's termination order.

15

/s/ Dana Womack

Dana Womack
Justice

Delivered:  May 18, 2023